# STATE OF MICHIGAN

# COURT OF APPEALS

RODNEY HARRISON,

Plaintiff,

and

MICHIGAN HEAD & SPINE INSTITUTE, PC,

Intervening Plaintiff-Appellant,

v

ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY,

Defendant-Appellee,

and

THURMAN CLIFFORD RIDENOUR,

Defendant.

UNPUBLISHED
November 28, 2017

No. 334083
Wayne Circuit Court
LC No. 14-013225-NF

Before: METER, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Intervening plaintiff, Michigan Head & Spine Institute, PC (MHSI), appeals as of right an order granting summary disposition to defendant Allstate Property & Casualty Insurance Company (Allstate), on the basis of the purported fraud of plaintiff, Rodney Harrison, in pursuing his claim for first-party no-fault benefits. We reverse and remand for further proceedings consistent with this opinion.

This case arose out of Harrison's alleged injuries resulting from a September 16, 2014, motor-vehicle accident. Harrison filed this action against his no-fault insurer, Allstate, seeking to recover first-party no-fault benefits, including medical expenses, lost wages, household-replacement-service expenses, and attendant-care expenses. MHSI, which is a medical provider, filed an intervening complaint seeking to recover from Allstate $71,245 in medical expenses incurred in treating Harrison for the injuries that he allegedly suffered in the accident. Following

-1-

discovery, Allstate moved for summary disposition pursuant to MCR 2.116(C)(10) on the ground that Harrison allegedly engaged in fraudulent acts in pursuing his first-party no-fault claim. Allstate argued that Harrison's fraud barred both his claim and the claim of MHSI seeking benefits on Harrison's behalf. At the hearing on the summary-disposition motion, it was noted that Harrison had accepted Allstate's offer to settle the case for $1,500 but that MHSI was still going forward with its claim. The trial court granted summary disposition to Allstate and dismissed MHSI's claim.

MHSI argues that the trial court erred in granting summary disposition to Allstate on the basis of Harrison's purported fraud because a genuine issue of material fact exists regarding whether Harrison engaged in fraud. We agree.

A trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(10) is reviewed de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012).

> In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 488; 892 NW2d 467 (2016) (quotation marks and citations omitted).]

The interpretation of an insurance policy presents a question of law that is reviewed de novo. *Dancey v Travelers Prop Cas Co*, 288 Mich App 1, 7; 792 NW2d 372 (2010). "Because insurance policies are contractual agreements, they are subject to the same rules of contract interpretation that apply to contracts in general." *Sherman-Nadiv v Farm Bureau Gen Ins Co of Mich*, 282 Mich App 75, 78; 761 NW2d 872 (2008). Unambiguous language must be enforced as written. *Century Surety Co v Charron*, 230 Mich App 79, 82-83; 583 NW2d 486 (1998). A court must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).

Initially, we note that Allstate failed to attach to its motion for summary disposition that led to the instant appeal a copy of the no-fault policy containing the "fraud" exclusionary clause that Allstate argues barred the claims asserted by Harrison and MHSI. MCR 2.116(G)(3)(b) provides: "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion [for summary disposition] are required . . . when judgment is sought based on subrule (C)(10)." Therefore, when seeking summary disposition under MCR 2.116(C)(10), "[t]he moving party must specifically identify the undisputed factual issues and has the initial burden of supporting its position with documentary evidence. The responding party must then present legally admissible evidence to demonstrate that a genuine issue of material fact remains for trial." *E R Zeiler Excavating, Inc v Valenti Trobec Chandler, Inc*, 270 Mich App 639, 644; 717 NW2d 370 (2006) (citations omitted). In this case, Allstate sought

summary disposition under MCR 2.116(C)(10) on the ground that a fraud exclusionary clause in the no-fault policy issued by Allstate to Harrison barred the no-fault claims asserted by Harrison and MHSI. Yet Allstate failed to attach to its instant summary disposition motion the no-fault policy containing the fraud exclusionary clause. Allstate notes on appeal that the no-fault policy was attached to MHSI's motion for reconsideration of the order granting summary disposition to Allstate.[1] However, this Court may "only consider what was properly presented to the trial court before its decision on the motion." *Pena v Ingham Co Road Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003); see also *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 120; 839 NW2d 223 (2013) (noting that "appellate review of the trial court's decision is limited to the evidence that had been presented at the time the motion was decided"), and *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 474 n 6; 776 NW2d 398 (2009) (declining to consider on appeal evidence that was first presented in support of a motion for reconsideration).

Nonetheless, Allstate had previously attached a copy of the no-fault policy to an earlier motion for summary disposition (a motion that Allstate later abandoned). MCR 2.116(G)(5) provides that "[t]he affidavits, together with the pleadings, depositions, admissions, and documentary evidence *then filed in the action or submitted by the parties*, must be considered by the court when the motion is based on subrule (C)(1)-(7) or (10)." (Emphasis added.) Because the no-fault policy attached to Allstate's earlier motion was "then filed in the action or submitted by the parties," MCR 2.116(G)(5), the trial court could consider the no-fault policy when deciding the instant motion for summary disposition, see *Brown v Pointer*, 390 Mich 346, 354; 212 NW2d 201 (1973) (holding that the trial court properly considered documentary evidence submitted with a prior motion for summary disposition when deciding a later motion for summary disposition).

We conclude, however, that the trial court erred in granting summary disposition to Allstate. A genuine issue of material fact exists regarding whether Harrison engaged in fraud when submitting his no-fault wage-loss claim.

The no-fault policy issued by Allstate to Harrison contained the following provision:

2. Concealment, Misrepresentation Or Fraud

This coverage form is void in any case of fraud by you at any time as it relates to this coverage form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This coverage form;

b. The covered "auto";

---

[1] The no-fault policy attached to MHSI's motion for reconsideration was issued after the accident in this case, but it contained the identical fraud exclusionary clause contained in the policy that was in effect at the time of the accident. The policy in effect at the time of the accident was provided to the trial court in an earlier motion for summary disposition, as explained below.

c. Your interest in the covered "auto"; or

d. A claim under this coverage form.

This Court has set forth the elements for establishing fraud in this context as follows:

> To void a policy because the insured has willfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 424-425; 864 NW2d 609 (2014) (quotation marks and citations omitted).]

If the fraud exclusion bars the recovery of benefits by Harrison, then it also bars recovery by MHSI because MHSI stands in the shoes of Harrison in this case. See *id.* at 424 ("Because intervening plaintiffs stood in the shoes of the named insured, if plaintiff cannot recover benefits, neither can intervening plaintiffs.").

> Further, this Court has explained:

> Reliance on an exclusionary clause in an insurance policy is an affirmative defense; therefore, [the insurer] has the burden of proof. An insurance company has the burden to prove that one of the policy's exclusions applies. Thus, to obtain summary disposition, the insurer must show that there is no question of material fact as to any of the elements of its affirmative defense. [*Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017), lv pending (quotation marks and citation omitted).]

In this case, the trial court found that Harrison committed fraud in submitting his wage-loss claim to Allstate and that there was no genuine issue of material fact regarding the matter.[2] MHSI argues that the trial court erred in making this determination because there was, at most, a factual question regarding whether Harrison committed fraud.

Harrison testified at his deposition that he was a professional limousine driver and that he worked before the accident as an independent contractor for various limousine companies, including Rochester Limousine, Luxury Limousine, and Rock Limo. According to Harrison, he

---

[2] Although Allstate also argued below that Harrison committed fraud in submitting his household-replacement-services and attendant-care-services claims to Allstate, the trial court did not find that Harrison committed fraud with respect to those claims; in fact, the court expressed agreement with MHSI's argument regarding the household-services claim but stated that the fraud with regard to wage loss required dismissal of the case.

worked 60 hours a week before the accident. He worked mostly for Rochester Limousine, where he earned $25 an hour for the first 40 hours each week, and $37.50 an hour for 20 hours of overtime. Harrison testified that, following the accident, he lost his full-time status, returned to work on June 23, 2015, and works approximately five hours a month, mostly for Rochester Limousine. Harrison estimated that he made $1,000 a week, not including tips, before the accident, and that since returning to work, he makes $100 a month, if he is called in for work.[3] Contrary to his original answers to interrogatories from Allstate, Harrison testified that he was not working for his wife's company, TPH Transportation Services (TPH), at the time of the accident; according to Harrison, his original answers to interrogatories contained this incorrect information because of an oversight and because he was heavily medicated and did not understand what he was writing.

Harrison's wife, Theresa Pollard-Harrison, provided deposition testimony that was somewhat confusing or unclear. She indicated that Harrison was not employed and had no income at the time of the accident, but she also noted that he worked on and off as a limousine driver. She further testified that he was not currently employed and that he had earned no income since the accident.

Amy O'Brien, a representative of Rochester Limousine, testified that Harrison was first hired by Rochester Limousine in April 2015, which was after the accident. O'Brien testified that Harrison at some point asked Rochester Limousine to provide a letter saying things that were not true, which Rochester Limousine refused to do, but O'Brien could not remember specifically what Harrison wanted the letter to say.

Luxury Limousine provided a statement indicating that Harrison earned a total of $2,172 as a driver for that company in the period from January 1, 2014, to December 14, 2015. Samer Zahr, the director of operations for Luxury Limousine, testified that Harrison was not a full-time driver for that company, and was only called in for work as an independent contractor when Luxury Limousine was very busy and needed extra help. Luxury Limousine did not have any records concerning when a customer provided a cash tip to a driver. Harrison told Zahr that Harrison had another job.

The custodian of records for Rock Limo provided an affidavit indicating that she had no records to provide because her computer files had been erased due to a computer virus. The records custodian further indicated that she had no recollection of Harrison.

The evidence summarized above presents a genuine issue of material fact regarding whether Harrison made a material misrepresentation with knowledge that the representation was false or made a material misrepresentation recklessly without knowledge of its truth. Allstate relies on *Bahri*, but in *Bahri*, there was unrebutted evidence of fraud. See *Shelton*, 318 Mich App at 655-656, 660 (distinguishing the holding in *Bahri* given the uncontested evidence of

_____

[3] In his amended interrogatory answers filed before his deposition, Harrison had indicated that, before the accident, he worked 65 hours a week and earned $1,750 a week as a limousine driver. It is not clear if this included tips.

fraud in *Bahri*). In this case, there is conflicting testimony regarding whether and how often Harrison worked. Harrison's wage-loss claim was supported by his own testimony, which was contradicted by the testimony of other witnesses, including O'Brien. The mere fact that Harrison has provided no documentation in support of his testimony regarding his employment does not establish that he committed fraud. A plaintiff's inability to produce documentation of his employment is not fatal to a claim for wage loss. See *Ward v Titan Ins Co*, 287 Mich App 552, 555-556; 791 NW2d 488 (2010), overruled in part on other grounds by *Admire v Auto-Owners Ins Co*, 494 Mich 10; 831 NW2d 849 (2013). Allstate produced no documentation disproving Harrison's testimony regarding his employment with Rochester Limousine. The existing record *weighs* in favor of a finding of fraud, but we are constrained by law to find that the conflicting testimony presents a credibility dispute that must be resolved by a trier of fact. Indeed, "[t]he trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). Although the records from Luxury Limousine indicated that Harrison made only a little over $2,000 while working for that company over a two-year period, this is consistent with Harrison's testimony that he worked mostly for Rochester Limousine.[4]

Another testimonial conflict exists regarding when Harrison returned to work following the accident. Harrison testified that he returned to work in June 2015, whereas O'Brien indicated that Harrison began working for Rochester Limousine in April 2015. Even if Harrison's testimony regarding his return-to-work date was incorrect, Allstate fails to establish that this was more than merely a mistaken memory on Harrison's part. See *Mina v Gen Star Indemnity Co*, 218 Mich App 678, 686; 555 NW2d 1 (1996) ("Fraud or false swearing implies something more than mistake of fact or honest misstatements on the part of the insured. . . . In order to prevail, the insurer must prove not only that the swearing was false, but also that it was done knowingly, wilfully, and with intent to defraud."), rev'd in part on other grounds 455 Mich 866 (1997).

Overall, we conclude that a genuine issue of material fact exists regarding whether Harrison committed fraud in submitting his wage-loss claim. The trial court therefore erred in granting summary disposition to Allstate on this basis.

Allstate has submitted a notice of supplemental authority taking note of the Michigan Supreme Court's recent opinion in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017). In *Covenant, id* at 196, the Court held that "healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act." But the Supreme Court further stated that the holding in *Covenant* does not "alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id*. at 217 n 40.

---

[4] Harrison's explanation of his initial discovery response falsely indicating that he worked for TPH—i.e., that this was an oversight and that he was heavily medicated and did not realize what he was writing—likewise presents a credibility question for the trier of fact.

MHSI has provided to this Court copies of numerous documents in which Harrison assigned to MHSI his right to collect no-fault benefits for services rendered by MHSI. Although those documents are not in the lower-court file, this is likely because *Covenant* was issued while this case was pending on appeal and the parties have thus not yet had an opportunity to litigate the applicability of *Covenant*. Further, although MHSI's intervening complaint did not directly allege that its claim was premised on Harrison's assignment of his rights to MHSI, this again may be attributable to the fact that *Covenant* was not issued until this case was pending on appeal. When a trial court grants summary disposition pursuant to MCR 2.116(C)(10), the nonprevailing party should be given an opportunity to amend its pleadings unless the amendment would not be justified; an amendment would not be justified if it would be futile. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52-53; 684 NW2d 320 (2004). In this case, an amendment of MHSI's intervening complaint may be justified if, as MHSI contends and as the evidence submitted to this Court suggests, Harrison assigned his rights to MHSI. The applicability of *Covenant* should thus be decided by the trial court on remand after the parties have an opportunity to litigate the matter.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Patrick M. Meter
/s/ Stephen L. Borrello