*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIMMIE DEWIGHT COLLINS, JR.,

       Plaintiff-Appellant,

v

VINCENT MICHAEL NIZZI and MICHAEL ANTHONY NIZZI,

       Defendants,

and

AUTO-OWNERS INSURANCE COMPANY,

       Defendant-Appellee.

UNPUBLISHED
January 20, 2022

Nos. 354510; 354871
Grand Traverse Circuit Court
LC No. 2019-035000-NI

Before: SAWYER, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

In Docket No. 354510, plaintiff appeals as of right the trial court's entry of judgment in favor of plaintiff, following a jury trial, on whether plaintiff was entitled to additional personal injury protection (PIP) benefits under Michigan's no-fault statute, MCL 500.3101 *et seq*. The judgment awarded plaintiff $366.67 for medical mileage. The jury found that plaintiff was not entitled to additional PIP benefits for replacement services and wage loss. In Docket No. 354871, plaintiff appeals as of right the trial court's denial of plaintiff's motion for costs and no-fault attorney fees. We affirm the jury's verdicts and the trial court's denial of attorney fees, but vacate the trial court's denial of court costs and remand for further proceedings.

On May 17, 2018, plaintiff Timmie Collins, Jr., was involved in a car accident in which his car was struck from behind by a vehicle owned by defendant Michael Nizzi and driven by defendant Vincent Nizzi. Plaintiff maintained that he sustained injuries and was entitled to PIP benefits from his insurer, defendant Auto-Owners Insurance Company, which initially paid benefits, but then stopped. Plaintiff's complaint included claims against the Nizzi defendants for negligence, and a claim against Auto-Owners for recovery of first-party PIP benefits. Plaintiff

settled his claims against the Nizzi defendants and the case proceeded to trial on plaintiff's claim against Auto-Owners.

A jury found that plaintiff sustained an accidental bodily injury arising from the May 2018 auto accident, and incurred allowable expenses arising from his injury, but did not incur any allowable expenses that had not already been paid by Auto-Owners. In particular, the jury found that plaintiff did not incur additional replacement services or work loss arising out of the accidental bodily injury. However, the jury found that Auto-Owners failed to reimburse plaintiff for 668 miles, and that this amount was overdue. Consistent with the jury's verdict, the trial court entered a judgment awarding plaintiff $366.67 for medical mileage, inclusive of interest. The trial court subsequently denied plaintiff's motion for no-fault attorney fees. The court also denied plaintiff's motion for recovery of costs on the basis of its conclusion that plaintiff was not the prevailing party entitled to costs.

## I. RECOVERY OF NO-FAULT ATTORNEY FEES

Plaintiff first argues that the trial court erred by denying his motion for recovery of no-fault attorney fees pursuant to MCL 500.3148(1). Plaintiff notes that the jury found that he was entitled to $313.96, plus interest, and that this amount was overdue. Plaintiff argues that he is entitled to no-fault attorney fees because Auto-Owners did not present any evidence to rebut the presumption that its failure to pay this amount was unreasonable. We disagree.

In *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008), this Court explained:

> The no-fault act provides for attorney fees when an insurance carrier unreasonably withholds benefits. The trial court's decision about whether the insurer acted reasonably involves a mixed question of law and fact. What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact. [Citations omitted.]

"A finding is clearly erroneous where this Court is left with the definite and firm conviction that a mistake has been made." *Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173, 194-195; 870 NW2d 731 (2015) (citation omitted).

The trial court did not err by determining that plaintiff was not entitled to no-fault attorney fees even though the jury found that payment for mileage was overdue.

MCL 500.3148(1) provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

Our Supreme Court has held that MCL 500.3148(1) establishes two prerequisites for an award of attorney fees. First, the benefits must not have been "paid within 30 days after an insurer

receives reasonable proof of the fact and of the amount of loss sustained." *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008). Second, the trial court must determine if the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." *Id*. "[A]n insurer's refusal to pay benefits is not unreasonable [i]f the insurer's refusal or delay in payment is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty." *Id*. at 520 (quotation marks and citation omitted); see also *Gobler v Auto-Owners Ins Co*, 428 Mich 51, 66; 404 NW2d 199 (1987). Thus, attorney fees are not warranted when the benefits "were reasonably in dispute, or, stated slightly differently, benefits [were] not yet overdue." *Moore*, 482 Mich at 519. When an insurance company refuses to tender payment of benefits, a rebuttable presumption will arise that requires the insurance company to justify its refusal. *Slocum v Farm Bureau Gen Ins Co of Mich*, 328 Mich App 626, 643; 939 NW2d 717 (2019). The determinative inquiry "is not whether the insurer is ultimately held responsible for benefits, but whether its initial refusal to pay was unreasonable. *Ross*, 481 Mich at 11.

According to plaintiff, the jury's finding that the mileage benefit was overdue necessarily meant that the initial refusal to pay was unreasonable.[1] We disagree. A finding that a benefit is owing and overdue does not require a trial court to find that the initial failure to pay was unreasonable. *Id.* The trial court found that Auto-Owners' initial decision to refuse to pay mileage was not unreasonable. The court focused on the total amount sought, and the relatively small award for mileage, and found that the failure to pay was an oversight that was not significant.

Plaintiff submitted his request for reimbursement of his medical mileage at some point after October 2, 2019, and Auto-Owners' claims adjuster, Amanda Service, sent plaintiff a letter on October 18, 2019, denying payment. Therefore, the reasonableness of Auto-Owners' denial is properly reviewed as of the date of Service's response, or October 18, 2019. At that point, Auto-Owners had already suspended payment on all of plaintiff's claims for no-fault benefits while the claim was under investigation. Contrary to plaintiff's argument on appeal, the decision to put plaintiff's claim under investigation was reasonable under the circumstances.

At trial, conflicting evidence was presented about the continued severity of plaintiff's injuries and recommended courses of treatment. Several physicians indicated that some of plaintiff's ailments were degenerative in nature, that plaintiff's injuries were not that severe, that they consisted only of "soft tissue" injuries, and that they should have resolved within six months after the accident. Service explained that her decision to discontinue benefits was made on the basis of her review of the claim as a whole. Service acknowledged that some of the requested reimbursement was for services that occurred as early as August 2018, and that plaintiff was entitled to reimbursement for mileage for the earlier visits. When asked why this had not been reimbursed, Service stated that the request for payment was submitted with other documents that had not been previously submitted. This supports the trial court's finding that it may have been an oversight for Service to include the small amount sought for mileage among plaintiff's other payment requests and not treat this claim for benefits separately. Such an approach is reasonable here, where plaintiff requested approximately a years' worth of mileage at once, particularly where

---

[1] Although the jury found that payment was overdue for mileage reimbursement for 668 miles, it did not make a finding that the initial refusal to pay was unreasonable.

the reimbursement form requests the insured to submit mileage requests monthly. In addition, plaintiff was awarded reimbursement for 668 miles, but his reimbursement form requested compensation for 2,324 miles. Thus, the jury awarded plaintiff less than a third of the mileage he requested. This award also supports the trial court's finding that Auto-Owners' initial decision not to reimburse plaintiff for the 668 miles the jury ultimately found reimbursable was not unreasonable. Plaintiff does not explain how Auto-Owners would have been able to calculate the amount of mileage actually reimbursable among the amounts that the jury ultimately decided were not. Accordingly, the trial court did not clearly err when it determined that Auto-Owners' initial refusal to pay for the mileage ultimately awarded by the jury was reasonable under the circumstances. Plaintiff has not shown that he is entitled to no-fault attorney fees even though the jury found that payment for some mileage was overdue.

## II. PREVAILING-PARTY COSTS

Plaintiff next argues that the trial court erred when it denied his motion for prevailing party costs of $2,058.50 pursuant to MCR 2.625. "This Court reviews a trial court's ruling on a motion for costs under MCR 2.625 for an abuse of discretion." *Fansler v Richardson*, 266 Mich App 123, 126; 698 NW2d 913 (2005). An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes. *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). "The determination whether a party is a "prevailing party" for the purpose of awarding costs under MCR 2.625 is a question of law, which this Court reviews de novo." *Fansler*, 266 Mich App at 126.

MCR 2.625 provides, in relevant part:

**(A) Right to Costs.**

(1) In General. Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action.

\* \* \*

**(B) Rules for Determining Prevailing Party.**

\* \* \*

(2) Actions With Several Issues or Counts. In an action involving several issues or counts that state different causes of action or different defenses, the party prevailing on each issue or count may be allowed costs for that issue or count. If there is a single cause of action alleged, the party who prevails on the entire record is deemed the prevailing party.

\* \* \*

(C) **Costs in Certain Trivial Actions.** In an action brought for damages in contract or tort in which the plaintiff recovers less than $100 (unless the recovery

is reduced below $100 by a counterclaim), the plaintiff may recover costs no greater than the amount of damages.

Thus, MCR 2.625(A)(1) provides that the prevailing party may recover costs, unless prohibited by statute or court rule, or unless the court directs otherwise for reasons stated in writing and filed in the record. And MCR 2.625(C) provides for a $100 minimum recovery requirement for a breach-of-contract claim in order to recover costs greater than the award of damages.

Similarly, MCL 600.2421b(3) provides:

"Prevailing party" means as follows:

(a) In an action involving several remedies, or issues or counts which state different causes of actions or defenses, the party prevailing as to each remedy, issue, or count.

(b) In an action involving only 1 issue or count stating only 1 cause of action or defense, the party prevailing on the entire record.

Also, "in order to be considered a prevailing party, that party must show, at the very least, that its position was improved by the litigation." *Fansler*, 266 Mich App at 128, quoting *Forest City Enterprises, Inc v Leemon Oil Co*, 228 Mich App 57, 81; 577 NW2d 150 (1998). The decision to award costs is discretionary, but a trial court must justify the failure to award costs. *Mason v City of Menominee*, 282 Mich App 525, 532; 766 NW2d 888 (2009); *Blue Cross & Blue Shield of Mich v Eaton Rapids Community Hosp*, 221 Mich App 301, 308; 561 NW2d 488 (1997).

In the instant case, plaintiff sought approximately $79,000 in total additional PIP benefits. Plaintiff recovered $313.96 for the nonpayment of mileage. With interest, the total plaintiff recovered in damages was $366.67. Plaintiff sought $2,058.50 in costs. However, the trial court determined that plaintiff was not the prevailing party because the overall outcome was more favorable to Auto-Owners, given that it did not have to pay a greater amount in additional requested PIP benefits. We disagree with this conclusion. Contrary to Auto-Owners' argument on appeal, and the trial court's apparent conclusion below, the instant case did not involve multiple causes of action or issues. Plaintiff presented only one claim against Auto-Owners, that being a claim for first-party no-fault benefits. Auto-Owners has presented nothing to support its position that multiple issues or claims were involved here because plaintiff sought amounts for different types of benefits he argued were owed to him. Further, Auto-Owners did not raise different defenses to each type of benefit plaintiff claimed should have been paid. Rather, it argued that it did not owe plaintiff any additional benefits because plaintiff's injury had "resolved" as of April 2019. Therefore, the trial court should have reviewed plaintiff's motion under MCL 600.2421b(3)(b) and the second sentence of MCR 2.625(B)(2) to determine whether plaintiff was the prevailing party.

Under the applicable provisions, plaintiff was the prevailing party. A party need not recover the full amount of requested damages to be a prevailing party entitled to costs under MCR 2.625. Rather the party must only show that its position was improved by the litigation. *Pontiac Country Club v Waterford Twp*, 299 Mich App 427, 437; 830 NW2d 785 (2013); *Forest*, 228 Mich

App at 81. The fact that plaintiff did not recover the full amount sought is not dispositive of whether he was the prevailing party under MCL 600.2421b(3)(b) or MCR 2.625. In addition, the plain language of MCR 2.625(C) clearly contemplates that a person can recover even less than $100 and still be a prevailing party, albeit with limited entitlement to costs. Indeed, at the hearing on plaintiff's motion for costs, defense counsel admitted that caselaw did not support Auto-Owner's position. Plaintiff improved his position, even if only slightly and not nearly as he had hoped. Therefore, the trial court erred by ruling that plaintiff was not the prevailing party.

However, contrary to plaintiff's position on appeal, he is not automatically entitled to costs simply because he is a prevailing party. An award of costs remains within the trial court's discretion. Under plaintiff's argument, a contract recovery of $101 would necessarily entitle the party to recover all costs. However, this is not supported by the plain language of MCR 2.625. The trial court's explanation, while erroneous in its conclusion, presented a rationale that the court could conceivably have used to exercise its discretion to deny an award of costs. But because the trial court believed that plaintiff was not a prevailing party as a matter of law, and thus did not exercise its discretion whether to award or deny costs, we remand this case to the trial court to determine, within its discretion, whether plaintiff's motion for costs should be denied even though he is the prevailing party under MCR 2.625.

### III. USE OF FACE MASKS

Plaintiff next argues that he was denied a fair trial because jurors wore face masks that covered their mouth and nose during voir dire and during trial, the attorneys wore such masks during trial, and certain witnesses wore face masks while testifying during video depositions. The masks were worn in conformity with COVID-19 safety protocols.

The record discloses that defense counsel only timely objected to the continued use of masks by seated jurors. Generally, an issue is preserved if it is raised below and decided by the trial court. *Polkton Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). The purpose of requiring a timely objection is to give the trial court an opportunity to correct the error. *People v Jones*, 468 Mich 345, 355, 662 NW2d 376 (2003); see also *People v Grant*, 445 Mich 535, 551; 520 NW2d 123 (1994) (discussing the purpose of requiring criminal defendants to raise an objection "at a time when the trial court has an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights"). In this case, although plaintiff challenged the trial court's requirement that the jurors wear masks during voir dire, he did so only after the jury was selected. Plaintiff argued below and does so on appeal that because the voir dire occurred in a high school auditorium, the first chance to object was after the jury was selected. However, plaintiff does not explain why counsel could not have requested a sidebar or requested that the parties and the court move to a different room in the school to discuss the matter outside the presence of the jury. Accordingly, plaintiff's objection was untimely.

Plaintiff also did not argue below that he was prejudiced because the jurors could not observe counsels' faces or plaintiff's face during voir dire, or could only fully view some witnesses during trial. Plaintiff's objection to the jurors' continued use of masks did not preserve these other claims of error. "An objection based on one ground at trial is insufficient to preserve an appellate

-6-

attack based on a different ground." *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996).

"Whether a party has been afforded due process is a question of law, subject to review de novo." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009). However, to the extent that this issue is unpreserved, this Court's review is for plain error affecting substantial rights. *Duray Dev, LLC v Perrin*, 288 Mich App 143, 150; 792 NW2d 749 (2010). "Plain error occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the lower court proceedings." *Id*.

This Court has explained the nature of "constitutionally sufficient" procedure in a civil case as follows:

> Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker. The opportunity to be heard does not mean a full trial-like proceeding, but it does require a hearing to allow a party the chance to know and respond to the evidence. [*Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995) (citation omitted).]

Moreover, with respect to plaintiff or the jury's ability to view witnesses without a face mask, as plaintiff acknowledges, "[t]he Confrontation Clause does not apply to civil proceedings." *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004).

In accord with these requirements, plaintiff received timely notice and a full trial, during which he was provided with the opportunity to present evidence, examine and cross-examine witnesses, and respond to the evidence presented by the defense. In addition, as discussed by Auto-Owners, plaintiff's underlying claim that he was denied due process because the jurors or others wore face masks is undercut by the caselaw cited by plaintiff in support of his position.

Plaintiff cites *United States v Crittenden*, unpublished order of the United States District Court for the Middle District of Georgia, issued August 21, 2020 (Docket No. 4:20-CR-7), which plaintiff maintains stands for the proposition that clear face shields or plexiglass could be used as a substitute for cloth masks. However, in *Crittenden*, the court, discussing a criminal defendant's rights, disagreed with the government's objections to the court's proposed protocols during trial, which included directing that witnesses wear masks while testifying, that jurors wear masks during jury selection, and that defendant sit six feet from his counsel. *Id*., unpub op at 1. The government had argued that these restrictions could infringe upon the defendant's constitutional rights, but after providing a detailed discussion of the development of these protocols and the underlying reasons for them, the court found that they would not violate the defendant's rights. With respect to the alternative of using face shields, the court noted that the Center for Disease Control had found that face shields were not an adequate substitute for the use of masks. The court stated:

> Here, the mask requirement is necessary to further an important public policy: ensuring the safety of everyone in the courtroom in the midst of a unique global pandemic. Without this procedure, everyone in the courtroom would face

the risk of being infected with a lethal virus. The Court's masking requirement is based upon the best available scientific information and advice. The Centers for Disease Control and Prevention ("CDC") strongly recommends that to avoid infection from the dangerous coronavirus, individuals should practice social distancing and wear masks over the nose and mouth. The wearing of the mask not only protects the wearer of the mask, but more significantly, protects others who may be in the same room with the person. These precautions are particularly important inside of a building. The CDC also makes a distinction between "masks" and "face shields," which is what the Government recommends here. The CDC finds that face shields are not as effective as masks, and it does not recommend substituting face shields for masks. Given the CDC recommendations, which are based on the best available science in this area, the Court finds that its social distancing and mask protocols are necessary and essential to protect the courtroom participants during a trial. The Court further finds that face shields and plexiglass screens are not an adequate substitute and standing alone do not provide reasonable protection for the trial participants. Thus a compelling policy reason exists for the mask requirement—protection of the health and safety of the trial participants and members of the public who may attend the trial. [*Id.*, unpub op at 5-6 (citations and footnote omitted).]

The court also discussed the concern that plaintiff here raises—that the jury would not be able to see a witness's nose and mouth while testifying—and found that witnesses' use of masks would not violate the defendant Confrontation Clause rights, stating:

> As Justice Scalia observed in *Coy v Iowa*, [487 US 1012; 108 S Ct 2798; 101 L Ed 2d 857 (1988)], the plain language of the Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." 487 US at 1016. This guarantee "enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person" and it serves a "strong symbolic purpose" by "requiring adverse witnesses at trial to testify in the accused's presence." [*Maryland v Craig*, 497 US 836, 846-847; 110 S Ct 3157; 111 L Ed 2d 666 (1990).] After all, "[i]t is always more difficult to tell a lie about a person 'to his face' than 'behind his back' " and "even if the lie is told, it will often be told less convincingly." *Coy*, 487 US at 1019. In *Coy*, the Supreme Court found that a courtroom procedure which involved placing a large screen between the defendant and witnesses so the witnesses could not see the defendant violated the defendant's right to a face-to-face confrontation with his accusers. *Id.* at 1014. Here, the Court's masking procedure is nothing like the procedure in *Coy*. The only thing that will stand in the way of the Defendant and his accusers is a tiny piece of cloth covering only each witness's nose and mouth. Therefore, the masks will in no way prohibit the Defendant and witnesses from directly looking upon each other in person during the testimony while in the presence of the jury. *There is no reason to believe that it is any less difficult to tell a lie to a person's face just because the liar's nose and mouth are covered.*

Of course, the masks will eliminate two aspects of demeanor for the jury to consider: movement of the nose and mouth. But the Confrontation Clause does not require that the jury be able to see every language of the body . . . .

The Court finds that being able to see a witness's nose and mouth is not essential to testing the reliability of the testimony. Demeanor consists of more than those two body parts. Demeanor includes the language of the entire body. Here, the jurors will be able to observe most facets of the witnesses' demeanor. They can observe the witnesses from head to toe. They will be able to see how the witnesses move when they answer a question; how the witnesses hesitate; how fast the witnesses speak. They will be able to see the witnesses blink or roll their eyes, make furtive glances, and tilt their heads. The Confrontation Clause does not guarantee the right to see the witness's lips move or nose sniff, any more than it requires the jurors to subject the back of a witness's neck to a magnifying glass to see if the hair raised during particularly probative questioning. Just as appropriate clothing will cover other parts of witnesses' bodies and potentially cover certain muscle twitches in those areas, the jury will not be able to see the masked witness's entire facial expressions. The masks, however, will not prevent observation of other aspects of their body language. [*Crittenden*, unpub op at 6-7 (emphasis added).]

The court also rejected the government's argument that covering prospective jurors' noses and mouths during jury selection would violate the defendant's rights, explaining:

The Government did not cite, and the Court could not find, any authority to suggest that requiring jurors to wear masks under the exceptional circumstances of the COVID-19 pandemic would impair Defendant's right to a fair and impartial jury. Rather, the Government's cases simply observe that a juror's demeanor is important and can provide a non-discriminatory explanation for striking a juror. The Government's argument suggests that observation of the nose and mouth are essential to evaluating demeanor. As explained in the preceding discussion, demeanor includes many aspects of body language which will still be present for evaluation. Of course, under normal circumstances, being able to see a potential juror's full facial expressions may be tactically preferable. But the Court is unconvinced that it is required by the Constitution. Through their review of informative juror questionnaires and questioning during voir dire, the parties should be able to obtain sufficient information to detect bias, disqualify jurors for cause, and exercise peremptory challenges. That is what the Constitution requires. [*Crittenden*, unpub op at 7.]

*Crittenden* supports Auto-Owners' position, and we find its analysis persuasive. In contrast, plaintiff has presented no caselaw or other support for his argument that the trial court reversibly erred when it permitted prospective jurors to wear masks during voir dire and during trial, or that plaintiff has been deprived of due process where some of the witnesses may have worn masks during trial.

Moreover, any perceived prejudice was shared equally by the parties. Plaintiff argues that the potential prejudice was not the same, because the jury could have been biased against those witnesses, such as plaintiff's experts, who wore masks while testifying in video depositions. This is mere speculation, especially where the face masks were being worn in conformity with national, if not global, safety protocols against the COVID-19 pandemic. Plaintiff has presented nothing to overcome the presumption that jurors are impartial. See *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008). In addition, the trial court instructed the jurors that they were not to let sympathy, prejudice, or other factors unrelated to the evidence presented at trial influence their decision, and that deposition testimony should be treated the same as testimony presented in court. Jurors are presumed to follow their instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

In sum, plaintiff has not shown that he is entitled to relief because the jurors, attorneys, or some of the witnesses wore cloth face masks during trial.

## IV. GREAT WEIGHT OF THE EVIDENCE

Plaintiff argues that the jury verdicts with respect to additional PIP benefits for replacement services and work loss are against the great weight of the evidence.[2] To preserve such a claim, a party must raise the issue below in a motion for a new trial. *Sherman–Nadiv v Farm Bureau Gen Ins Co of Mich*, 282 Mich App 75, 80; 761 NW2d 872 (2009); *Brown v Swartz Creek VFW*, 214 Mich App 15, 27; 542 NW2d 588 (1995). Plaintiff concedes that he did not file an appropriate motion in the trial court, and as such, his appellate claims are unpreserved. Accordingly, we review plaintiff's unpreserved claims for plain error affecting plaintiff's substantial rights. *Duray Dev, LLC*, 288 Mich App at 150.

As explained in *Allard v State Farm Ins Co*, 271 Mich App 394, 406-407; 722 NW2d 268 (2006):

> When a party challenges a jury's verdict as against the great weight of the evidence, this Court must give substantial deference to the judgment of the trier of fact. If there is any competent evidence to support the jury's verdict, we must defer our judgment regarding the credibility of the witnesses. The Michigan Supreme Court

---

[2] Although plaintiff also suggests that he is entitled to judgment notwithstanding the verdict (JNOV) on his claims for additional replacement-service and work-loss PIP benefits, he did not move for JNOV in the trial court. Moreover, his substantive discussion of these claims relies on his argument that the jury's verdicts are against the great weight of the evidence, and he cites legal authority that applies to a great-weight challenge. Plaintiff's request for relief also requests that this Court find that the jury verdicts are against the great weight of the evidence and he requests a new trial, which is the remedy for a great-weight claim. In contrast, the relief for a determination that the trial court erred by denying a motion for JNOV is a judgment for the moving party. See, e.g., *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 140; 666 NW2d 186 (2003). Accordingly, we confine our analysis to whether the jury's verdicts are against the great weight of the evidence.

has repeatedly held that the jury's verdict must be upheld, even if it is arguably inconsistent, if there is an interpretation of the evidence that provides a logical explanation for the findings of the jury. Every attempt must be made to harmonize a jury's verdicts. Only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside. [Quotations and citations omitted.]

## A. REPLACEMENT SERVICES

An insurer is liable for claimed benefits that are casually connected to the accidental bodily injury arising out of an automobile accident. *Griffith v State Farm Mut Ins Co*, 472 Mich 521, 531; 697 NW2d 895 (2005). Pursuant to MCL 500.3107(1)(a), PIP benefits are generally payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Pursuant to MCL 500.3107(1)(c) this includes

> [e]xpenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent.

The insured bears the burden of proving by a preponderance of the evidence whether an expense was reasonable and necessary. *Douglas v Allstate Ins Co*, 492 Mich 241, 269; 821 NW2d 472 (2012). Whether an expense is reasonably necessary is reviewed under an objective standard. *Id*. at 265.

At trial, plaintiff sought approximately $11,900 for PIP replacement services. Plaintiff essentially maintains that he proved that he was entitled to this amount by presenting the testimony of himself and his wife, and providing a calendar listing of the services in question. However, plaintiff ignores testimony and other evidence that undermined his claim for replacement-service expenses. Although plaintiff reported his neck pain at a 7 out of 50 at the end of his first round of physical therapy, and reported that he continued to have difficulty performing chores, he was presented with his June 4, 2019 responses to Dr. Marin Bleiberg, M.D., in which he indicated that he was able to perform those chores. Plaintiff also acknowledged that his physical therapy discharge summary of September 6, 2018, reported that he told his physical therapist that he had used a power washer to wash his deck the day before. Plaintiff also acknowledged that the therapy discharge paperwork recorded that he reported having a pain level of only "1," or very mild, and that he could perform most of his work, but that lifting heavy weights continued to cause him "extra" pain. Plaintiff's wife also acknowledged that plaintiff told Dr. Bleiberg that he could perform household chores. She maintained that plaintiff could only do so with pain "at times," but she also conceded that Dr. Bleiberg's records indicated that plaintiff had reported pain when bending and twisting, but not while performing housework tasks. On cross-examination, plaintiff acknowledged that he told Dr. James R. MacKenzie, M.D., on March 4, 2019, that he spent approximately 12 hours a day in bed and could not perform any type of physical activity. But plaintiff's credit card statements for the applicable time period showed 43 visits to the hardware store. Dr. MacKenzie also testified that he would expect the vast majority of individuals suffering

injuries similar to plaintiff's to be significantly better after six months, and that it would be "somewhat atypical" for the injuries to persist for two years.

In sum, there was substantial evidence from which the jury could have found that plaintiff and his wife were overstating the need for replacement services. Plaintiff has not shown that there was no competent evidence to support the jury's verdict, or that the verdict was logically or legally inconsistent. Accordingly, plaintiff is not entitled to relief with respect to the jury's verdict refusing to award additional PIP benefits for replacement services. *Allard*, 271 Mich App at 406-407.

## B. WORK-LOSS BENEFITS

Likewise, plaintiff is not entitled to relief with respect to the jury's verdict concerning additional work-loss benefits.

Pursuant to MCL 500.3107(1)(b), PIP benefits are generally payable for "[w]ork loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured." The claimant bears the burden of proof to establish his actual loss of earnings. *Sullivan v North River Ins Co*, 238 Mich App 433, 437; 606 NW2d 383 (1999).

In the instant case, the jury's decision not to award plaintiff additional work-loss benefits is supported by competent evidence. As noted, the parties presented opposing testimony about the continued severity of plaintiff's injuries and recommended courses of treatment. Several physicians agreed that some of plaintiff's ailments were degenerative in nature, that plaintiff's injuries were not that severe, that they consisted only of "soft tissue" injuries, and that they should have resolved within six months of the accident. Dr. MacKenzie testified that he would expect the vast majority of persons with injuries similar to plaintiff's to be significantly better after six months, and that it would be "somewhat atypical" for the injuries to persist for two years. Dr. Sohail Jilani, M.D., similarly testified that the typical period of time for resolution of a sprain or strain injury is a couple of weeks to a couple of months. Amanda Service also stated that she had not had any insureds with a soft-tissue neck injury who remained unable to work, or who continued to require treatment, after two years. Plaintiff's primary care physician, Dr. Andrew Long, D.O., similarly testified that when plaintiff came to see him on March 12, 2019, he recommended a work-hardening program and provided a referral to a program.[3] Dr. Jilani and Dr. MacKenzie also recommended that plaintiff enroll in a work-hardening program. Plaintiff did not enroll in such a program. Considering this body of evidence, plaintiff has not shown that there was no competent evidence to support the jury's verdict, or that the verdict was logically or legally inconsistent. Accordingly, plaintiff is not entitled to relief with respect to the jury's verdict refusing to award additional PIP wage-loss benefits. *Allard*, 271 Mich App at 406-407.

---

[3] Dr. Long testified that a work-hardening program is a combination of physical therapy and learning alternate methods to perform tasks without risking injury. Dr. MacKenzie testified that such programs typically last six to eight weeks.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, neither party having prevailed in full.

/s/ David H. Sawyer
/s/ Deborah A. Servitto
/s/ Michelle M. Rick