761 N.W.2d 872 (2008)
SHERMAN-NADIV
v.
FARM BUREAU GENERAL INSURANCE COMPANY OF MICHIGAN.
No. 279302.
Court of Appeals of Michigan.
Submitted November 13, 2008, at Detroit.
Decided November 20, 2008.
Approved for publication January 13, 2009, at 9:05 a.m.
*873 Demorest Law Firm, PLLC (by Mark S. Demorest and Melissa L. Demorest), Birmingham, for the plaintiffs.
Moblo & Fleming, P.C. (by Daniel J. Fleming, Livonia, and Allison L. Silverstein), for the defendant.
Before: JANSEN, P.J., and O'CONNELL and OWENS, JJ.
PER CURIAM.
In this insurance action, plaintiffs appeal as of right, arguing both that defendant was improperly granted a motion in limine because the language forming the basis for the denial of coverage was ambiguous and that the jury's finding that the subject *874 premises had been vacant for 30 days before the loss occurred was against the great weight of the evidence. We affirm.
Plaintiffs, Rochelle Sherman-Nadiv and Yair Nadiv, own several rental properties in southeast Michigan, including a rental home at 41 West Hayes Street in Hazel Park (the house). Defendant, Farm Bureau General Insurance Company of Michigan, issued an insurance policy on the house to plaintiffs. After tenants moved from the house in the autumn of 2003, the house remained vacant for several months. During this time, plaintiffs oversaw repairs and renovation work undertaken to prepare the house for rental relicensure by the city. The city issued a landlord license for the house on April 29, 2004. Soon thereafter, Gregory Fyfe contacted plaintiffs and expressed an interest in renting the home. Sherman-Nadiv met Fyfe at the house on May 1, 2004, and Fyfe agreed to rent the house. Fyfe signed the lease, gave Sherman-Nadiv $500, and received a house key.
Fyfe promised to pay the balance of the initial month's rent by May 15, 2004, but he never did. When Sherman-Nadiv went to the house on May 15, 2004, to collect the rent from him, she discovered that the house was unoccupied. When she returned to the house a couple of days later to post a notice to quit, she again noticed that the house appeared to be unoccupied. Although some clothes and a couch were later found in the house, none of the individuals living in neighboring homes reported seeing activity at the house during the period when Fyfe supposedly lived at the house, and overall there was conflicting evidence regarding whether the house was occupied in May 2004.
On May 29, 2004, a woman living near the house noticed through an open window that the ceiling to the living room and dining room had been damaged, and she contacted Sherman-Nadiv. Sherman-Nadiv went to the house and, upon entering, discovered that the house had suffered extensive water damage as a result of a break in the supply line of the second-floor toilet. Plaintiffs filed a claim for loss with defendant, reporting the date and time of loss as May 29, 2004, at 12:00 p.m. Defendant formally denied plaintiffs' claim on July 11, 2005, and plaintiffs subsequently brought this action in order to recover under the insurance contract.
At trial, a jury was asked to decide whether plaintiffs engaged in "fraud, false swearing, misrepresentation and/or concealment of material facts in the presentation of [the insurance] claim to Defendant with intent for the Defendant to rely on the misrepresentations which bars [plaintiffs'] claim pursuant to the terms of the policy." The jury determined that plaintiffs did not do so. The jury also rendered a verdict indicating that "the premises located at 41 W. Hayes, Hazel Park, Michigan [was] vacant more than 30 consecutive days immediately before the loss."
First, plaintiffs argue that the trial court erred when it granted defendant's motion in limine to preclude plaintiffs from presenting evidence, testimony, or argument at trial regarding whether the house was "being constructed" at the time of the loss. We disagree.
The trial court has the discretion to admit or exclude evidence, and we will not disturb the trial court's ruling on such an issue absent a determination that an abuse of discretion occurred. Elezovic v. Ford Motor Co., 472 Mich. 408, 419, 697 N.W.2d 851 (2005). A trial court does not abuse its discretion when its decision falls within the range of principled outcomes. Maldonado v. Ford Motor Co., 476 Mich. 372, 388, 719 N.W.2d 809 (2006). The proper interpretation of a contract and the *875 legal effect of a contractual clause are questions of law that we review de novo. McDonald v. Farm Bureau Ins. Co., 480 Mich. 191, 197, 747 N.W.2d 811 (2008).
Because insurance policies are contractual agreements, they are subject to the same rules of contract interpretation that apply to contracts in general. Rory v. Continental Ins. Co., 473 Mich. 457, 461, 703 N.W.2d 23 (2005); Auto-Owners Ins. Co. v. Churchman, 440 Mich. 560, 566, 489 N.W.2d 431 (1992). A court must construe and apply unambiguous insurance policy provisions as written, unless a policy provision is illegal or a traditional defense to the enforceability of a contract applies. Auto-Owners Ins Co, supra at 566-567, 489 N.W.2d 431. An insurance policy is read as a whole, and meaning should be attributed to all terms. Royal Prop. Group, LLC v. Prime Ins. Syndicate, Inc., 267 Mich.App. 708, 715, 706 N.W.2d 426 (2005). "The contractual language is to be given its ordinary and plain meaning." Id.
The insurance policy in this case provides, in pertinent part:
We insure for direct physical loss to the property covered caused by a peril listed below, unless the loss is excluded in the General Exclusions.
* * *
12. Accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or from within a household appliance. We also pay for tearing out and replacing any part of a covered building necessary to repair the system or appliance from which the water or steam escaped.
This peril does not include loss:
* * *
b. on the Described Location, if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant[.]
The plain and ordinary meaning of the phrase "being constructed," as used in the contract, indicates that a house being erected (that is, built from the ground up) is not considered vacant pursuant to the policy exclusion. The language is unambiguous. If the exclusion had stated that a house "under construction" was not considered vacant, it is arguable that the phrase would be susceptible to more than one reasonable construction. Had the parties intended the exception to apply to houses where repairs, remodeling, or renovation work were being performed, the policy would have reflected this intent unambiguously. Plaintiffs' argument that "being constructed" encompasses repairs, remodeling, or renovation work is unpersuasive because this broad interpretation would lead to the result that a house would not be considered vacant under a wide variety of circumstances where major or minor repair work was performed in the 30 days preceding a loss. In that case, the insurer would be uncertain regarding the extent of the risk it would be required to cover, and an insured, in order to defeat the policy exclusion, would only be required to show evidence that any sort of repair, however minor, occurred in the 30 days preceding the loss. On the other hand, the process of building or constructing a house consists of a discrete event with a beginning and an end. In that case, both the insurer and insured are aware of the scope of the risk and extent of coverage because of this comparatively certain time period.
In any event, contrary to plaintiffs' argument, the record demonstrates that the trial court did not rely on a narrow construction of "being constructed" when it granted defendant's motion in limine. The trial court interpreted "being constructed" *876 broadly as "action that is still in progress," but concluded that there was no indication that any construction or repair work had been performed at the house in the 30 days preceding the loss. Accordingly, the trial court did not abuse its discretion when it granted defendant's motion in limine to preclude evidence, testimony, or arguments that the house was "being constructed" in the 30 days preceding the loss.
Plaintiffs also claim that the jury's verdict was against the great weight of the evidence. However, plaintiffs failed to properly raise this issue below in a motion for a new trial, and our failure to review this unpreserved issue will not result in a miscarriage of justice. Therefore, we decline to consider this issue further.[1] See Hyde v. Univ. of Michigan Bd. of Regents, 226 Mich.App. 511, 525, 575 N.W.2d 36 (1997).
Affirmed.
NOTES
[1] Nevertheless, although plaintiffs argue otherwise, the verdicts in this case were not inconsistent. The jury could have believed Sherman-Nadiv's testimony regarding her encounter with Fyfe, and also believed that Fyfe leased, but never occupied, the house.