# STATE OF MICHIGAN

# COURT OF APPEALS

JUDY WILLIAMS and GEORGIA DILLON,

        Plaintiffs-Appellants,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
November 10, 2016

No. 326008
Wayne Circuit Court
LC No. 12-013758-NF

Before: SHAPIRO, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this action for no-fault personal protection insurance (PIP) benefits, the jury determined that plaintiffs Judy Williams and Georgia Dillon had not been involved in a motor vehicle accident. Based on the jury's verdict, the trial court entered a judgment of no cause of action with respect to plaintiffs' claims for PIP benefits. Plaintiffs now appeal as of right. For the reasons explained in this opinion, we affirm.

According to plaintiffs, they were in an automobile accident on June 1, 2012 while driving in Williams's Ford Freestar. Specifically, they contend that they were struck from behind by a Chrysler Sebring while stopped at a light. According to Williams's description, the Freestar suffered "slight damage, very light" consisting of a "scratch." The other driver stopped briefly. She identified herself as "Diane Green" and provided Williams with her license to allow Williams to copy down the driver's license number. Williams also copied down the Sebring's license plate number. However, the other woman indicated that she did not have insurance, was late to pick-up her mother and she soon left the scene without waiting for police to arrive. Plaintiffs reported the accident to police and provided information on the driver of the Sebring.

Plaintiffs both filed a claim with Williams's no-fault insurer, defendant State Farm, claiming injuries arising out of, or exacerbated by, the June 1, 2012 accident. After defendant declined to pay the claims, plaintiffs filed the present suit for no-fault benefits.

At trial, defendant's theory of the case was that no accident occurred on June 1, 2012. To support this assertion, defendant presented the jury with photographs of Williams's vehicle and expert testimony from a mechanical engineer, Charles Funk, regarding the condition of Williams's vehicle following the alleged crash. After examining the Freestar, Funk testified that there was "no physical evidence on the back" of Williams's vehicle to "indicate that it has ever

-1-

been involved in a motor vehicle collision." Aside from Funk's testimony, the evidence at trial showed that the driver's license number obtained by Williams at the scene of the accident produced no known results. The license plate number matched that for a Sebring owned by Yolanda Gardner, but Gardner testified at trial that she had not been involved in an accident on the day in question and that she did not let anyone else drive her car. Gardner also provided a timecard indicating that she was at work when the accident supposedly occurred, and her driver's license did not match the number purportedly obtained by Williams from the other driver. In addition, there were inconsistencies between Williams's and Dillon's description of events as well as inconsistencies in Williams's claim for benefits and her statements to her doctors. Finally, defendant also introduced evidence that Williams in particular had been involved in two previous automobile accidents in 2005 and 2011, both involving rear-end collisions, minor claimed damage to her vehicle, and claims for back, knee, and other injuries prompting lawsuits against no-fault insurers. As in the present case, the other driver in the 2005 accident left the scene without waiting for police.

The verdict form specifically asked the jury to determine whether plaintiffs had been involved in a motor vehicle accident on June 1, 2012. The jury answered "no" with respect to both plaintiffs, and consequently the trial court entered a judgment of no cause of action. Plaintiffs now appeal as of right.

On appeal, plaintiffs first contend that the trial court abused its discretion by denying their motion in limine to exclude evidence of Williams's prior lawsuits involving similar motor vehicle accidents because, applying MRE 404(b), the evidence of the lawsuits was irrelevant and more prejudicial than probative under MRE 403. Notably, in making this argument, plaintiffs wholly concede that evidence of the other accidents—including the circumstances of the accidents and Williams's related medical records—was admissible. It is only the mention of the other *lawsuits* to which plaintiffs object on appeal.

We review the trial court's admission of evidence for an abuse of discretion. *Sherman-Nadiv v Farm Bureau Gen Ins Co of Mich*, 282 Mich App 75, 77; 761 NW2d 872 (2008). "A trial court abuses its discretion when its decision results in an outcome falling outside the range of principled outcomes." *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 685; 819 NW2d 28 (2011). Questions of law underlying a trial court's evidentiary decision are reviewed de novo. *Id.* Even if this Court finds error in the admission of evidence, such error "will not warrant appellate relief unless refusal to take this action appears inconsistent with substantial justice, or affects a substantial right of the opposing party." *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004) (citation, alteration, and quotation marks omitted), citing MCR 2.613(A) and MRE 103(a).

In this case, plaintiffs contend that evidence of Williams's past lawsuits constitutes improper character evidence inadmissible under MRE 404(b). Under MRE 404(b), evidence is admissible provided that the proponent demonstrates the evidence "is (1) offered for a proper purpose, i.e., to prove something other than the defendant's propensity to act in a certain way, (2) logically relevant, and (3) not unfairly prejudicial under MRE 403." *Rock v Crocker*, 499 Mich 247, __; __ NW2d __ (2016); slip op at 7-8. The fact that a party has previously exercised the right to bring a lawsuit would not typically be relevant to a jury's determination in a later case. However, given the unique facts of this case, where the defense asserts that the accident never

occurred and that its report was part of an ongoing scheme to defraud, we find that the trial court did not abuse its discretion by ruling that the evidence was legally relevant for a proper purpose. MRE 404(b) allows for evidence of other acts "as poof of . . . scheme, plan or system in doing an act." Moreover, the risk of unfair prejudice from mentioning the fact of the lawsuits did not substantially outweigh the probative value of the evidence, particularly when plaintiffs concede that evidence of the accidents and past injuries was admissible, and it is the pattern of accidents which is most compelling in this case. Indeed, the references to the lawsuits were relatively few at trial, consisting of several questions over the course of three days and some very brief remarks in closing. Consequently, the trial court did not abuse its discretion by admitting the contested evidence.

Next, plaintiffs argue that the trial court abused its discretion by permitting Funk to offer expert testimony about the condition of Williams's vehicle and to opine that her vehicle had not been involved in an accident. According to plaintiffs, Funk's opinions were unreliable and thus inadmissible under MRE 702. Plaintiffs maintain that the trial court abdicated its gatekeeping responsibilities by failing to assess Funk's qualifications and to ensure the reliability of Funk's proposed testimony.

The admissibility of expert testimony is governed by MRE 702, which states:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under this rule, the trial court is required to act as a gatekeeper, "to ensure that any expert testimony admitted at trial is reliable." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780; 685 NW2d 391 (2004). See also MCL 600.2955.

In this case, assuming that plaintiffs' counsel called the trial court's attention to its gatekeeping obligation under MRE 702,[1] any failure by the trial court to consider Funk's

---

[1] "[A] party may waive any claim of error by failing to call this gatekeeping obligation to the court's attention[.]" *Craig*, 471 Mich at 82. On the first day of trial, plaintiffs objected to the admission of Funk's testimony, but they did so based on a claim of unfair surprise, asserting that they had not been given adequate notice of Funk's testimony. In making this argument, plaintiffs' counsel referenced *Daubert*, indicating that, because of the late notice, plaintiffs had not obtained their own expert and "we don't know if this is junk science." However, plaintiffs did not ask for a *Daubert* hearing, they did not ask the trial court to assess the reliability of Funk's evidence, and they did not contend that Funk failed to qualify as an expert. See *City of Westland v Okopski*, 208 Mich App 66, 72; 527 NW2d 780 (1994) ("An appeal based on one ground is not preserved where the objection at trial was on a different ground."). Consistent with

qualifications and to evaluate the reliability of Funk's opinion before admitting his testimony was harmless, and thus plaintiffs are not entitled to relief. That is, it is readily apparent from the trial transcripts that Funk's testimony was admissible under MRE 702 because Funk was a qualified expert who offered reliable testimony that was helpful to the jury's understanding of the evidence and its determination of a fact at issue.

The record indicates that Funk is a mechanical engineer with both a bachelor's degree and PhD. He is licensed in eight states, including Michigan, and he makes his living as an engineering consultant. Plainly, by reason of knowledge, skill, experience, training, or education, Funk qualified as an expert in mechanical engineering. See MRE 702. It is also clear that his testimony involved scientific, technical, and other specialized knowledge, helpful to the jury's assessment of the photographs of the vehicles admitted into evidence and the jury's determination of whether Williams's car was involved in an accident. See MRE 702. Lastly, as required by MRE 702, Funk's testimony was reliable. In this regard, first of all, the record shows that there were sufficient facts supporting his opinion—namely, evidence from all parties that neither vehicle showed a great deal of damage. Indeed, Funk personally examined Williams's vehicle and he viewed photographs of Gardner's vehicle. He obtained measurements for Freestar and Sebring vehicles. He also reviewed the police report for weather conditions, he was present for Williams's deposition, and he visited the site of the alleged accident. Second, Funk also employed reliable principles when formulating his expert opinion. Funk detailed the basic principles of physics and engineering he employed to determine how the two bumpers would interact if they collided in a rear-end accident. He explained that, when two cars collide in a rear-end crash, they move up and down relative to each other, and the friction of the plastic bumpers results in vertical scratches on each bumper. Funk referenced studies that supported his explanation of the interaction of bumpers, including a study on a Freestar that indicated force to the bumper would cause severe damage. Third, Funk applied these principles reliably to the facts of this case. Based on his examination of Williams's vehicle and the photographs of Gardner's car, neither of which showed vertical scratches indicative of a rear-end accident, Funk opined that Williams's vehicle had not been involved in a rear-end accident of the type described by plaintiffs. On the whole, Funk provided a reliable opinion, admissible under MRE 702. Because his opinion was clearly admissible, any failure by the trial court to perform its gatekeeping function did not affect plaintiffs' substantial rights and did not result in substantial injustice. Thus, plaintiffs are not entitled to relief on appeal. See *Craig*, 471 Mich at 76.

Finally, plaintiffs argue that the trial court abused its discretion by refusing plaintiffs' request for additional time to present rebuttal argument after counsel used all of the allotted time in his initial closing argument. We disagree. Rules relating to the conduct of a trial court are set forth in MCR 2.507. In particular, MCR 2.507(E), which concerns final arguments, states:

> After the close of all the evidence, the parties may rest their cases with or without
> final arguments. The party who commenced the evidence is entitled to open the

plaintiffs' arguments, the trial court addressed the claim of unfair surprise, but did not conduct an MRE 702 analysis. Nevertheless, giving plaintiffs the benefit of the doubt, we will assume for the sake of argument that plaintiffs' oblique reference to *Daubert* in the course an argument on unfair surprise was enough to call the court's attention to its gatekeeping function.

argument and, if the opposing party makes an argument, to make a rebuttal argument not beyond the issues raised in the preceding arguments.

However, it must also be remembered that "[t]he trial judge has broad power and discretion concerning the conduct of the arguments before the jury." *Heintz v Akbar*, 161 Mich App 533, 537-538; 411 NW2d 736 (1987). For example, pursuant to MCR 2.507(F), "[t]he court may limit the time allowed each party for opening statements and final arguments."

In this case, the trial court exercised its discretion over the parties' arguments by limiting each party to 20 minutes of closing argument. When limiting the parties, the trial court made plain that this allotment of time was a "total" amount of time, including any rebuttal. Before arguments, plaintiffs' attorney indicated that he would like to reserve 5 minutes for rebuttal. The trial court approved of this plan, but reminded counsel that counsel would then "have 15 minutes" for his initial argument. Counsel's initial argument consumed all 20 minutes. After defendant's argument, plaintiffs' attorney attempted to offer a rebuttal argument, but the trial court denied the request because plaintiffs' attorney had already used the entirety of his 20 minutes. On appeal, plaintiffs do not argue that the 20 minutes allotted was inadequate in and of itself and we do not believe the trial court was obligated to grant additional time after that time was consumed. Its refusal to grant this unusual request did not constitute an abuse of discretion. Moreover, plaintiffs make no effort to establish prejudice, and the trial court's ruling did not result in a substantial injustice. See MCR 2.613(A). Plaintiffs are not entitled to relief.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra