*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MUNIR HURMIS and EVAA TOBIA,

        Plaintiffs-Appellants,

v

LAKEITHA LAWANNA BAILY, CITIZENS
INSURANCE COMPANY OF THE MIDWEST,
PROGRESSIVE MICHIGAN INSURANCE
COMPANY, and PROGRESSIVE MARATHON
INSURANCE COMPANY

        Defendants-Appellees.

UNPUBLISHED
November 30, 2023

No. 363022
Wayne Circuit Court
LC No. 21-006718-NI

Before: RIORDAN, P.J., and CAVANAGH and GARRETT, JJ.

PER CURIAM.

In this action seeking damages following an automobile accident, plaintiffs, Munir Hurmis and Evaa Tobia, appeal as of right a default judgment entered against defendant Lakeitha Lawanna Baily. Plaintiffs' claims of error, however, concern earlier orders granting summary disposition in favor of defendant Citizens Insurance Company of the Midwest (Citizens) and denying plaintiffs' request to reinstate their claims against defendant Progressive Michigan Insurance Company (Progressive Michigan).[1]  We affirm.

## I. BACKGROUND

This case stems from a motor vehicle accident that occurred in June 2018. Plaintiffs were passengers in a GMC Terrain driven by Evaa's brother, Evan Tobia. They were traveling on I-75 when a Dodge Caravan sideswiped their passenger side. Plaintiffs' deposition testimony differed as to whether they interacted with any of the Caravan's occupants, but it is undisputed that all the

---

[1] Defendant Progressive Marathon Insurance Company was dismissed by stipulated order in recognition of the fact that Progressive Michigan was the correct defendant.

occupants fled the scene before police arrived.  The traffic crash report confirmed as much, but still identified Baily as the driver of the Caravan,[2] which was owned by EAN Holdings, LLC.

At the time of the accident, plaintiffs owned two vehicles insured by Citizens.  Their policy included uninsured motorist (UM) and underinsured motorist (UIM) endorsements, both providing for benefits up to $100,000 for each person and $300,000 for each occurrence.  Evan's Terrain was insured by Progressive Michigan under a policy that likewise extended UM and UIM coverage, albeit with lower policy limits.  According to documentation submitted by Citizens, as of June 2, 2021, EAN Holdings "qualified for a Certificate of Self-Insurance Authority (COSI) to operate as a Michigan automobile self-insured entity pursuant to Public Act No. 204 of 2012."  The parties do not dispute that EAN Holdings was a self-insurer at all times relevant to this case.

Plaintiffs filed this lawsuit in June 2021, alleging a negligence count against Baily and seeking UM or UIM benefits from Citizens and Progressive Michigan.  Baily never participated in this action, and a default judgment was eventually entered against her for $200,000 with respect to Munir and $200,000 with respect to Evaa.

Progressive Michigan moved for summary disposition under MCR 2.116(C)(10) on the basis that neither plaintiff qualified as insured persons under its policy because both were "insured for Uninsured/Underinsured Motorist or similar coverage" under the policy issued by Citizens.  The trial court agreed, granted Progressive Michigan's motion, and dismissed Progressive Michigan without prejudice.

Citizens likewise moved for summary disposition under MCR 2.116(C)(10) several months later. Citizens cited portions of its UM and UIM endorsements that excluded from the definition of an uninsured motor vehicle or underinsured motor vehicle, respectively, vehicles owned by a self-insured entity.  Citizens also argued that both endorsements required claimants to provide proof of the amounts payable, which plaintiffs could not do without first proving that Baily was actually uninsured or underinsured, and plaintiffs had done nothing to establish Baily's insurance status at the time of the accident.  The trial court agreed that summary disposition was warranted for the reasons raised by Citizens.

Plaintiffs moved for reconsideration of the order granting summary disposition in favor of Citizens.  They alternatively argued that if the trial court was disinclined to reverse its ruling as to Citizens, it should reinstate the claims against Progressive Michigan because the basis for the earlier dismissal was no longer valid.  The trial court denied plaintiffs' motion, and this appeal followed.

## II.  STANDARD OF REVIEW

"Appellate review of a motion for summary disposition is de novo."  *Gyarmati v Bielfield*, 245 Mich App 602, 604; 629 NW2d 93 (2001).  In addition, "[t]he proper interpretation of a

---

[2] Although there was no evidence presented on this point, the parties seem to agree that Baily was, at minimum, the person who leased the Caravan from a rental company associated with EAN Holdings.

contract and the legal effect of a contractual clause are questions of law that we review de novo." *Sherman-Nadiv v Farm Bureau Gen Ins Co of Mich*, 282 Mich App 75, 78; 761 NW2d 872 (2008). "We review for an abuse of discretion a trial court's decision on a motion for reconsideration." *Macomb Co Dep't of Human Servs v Anderson*, 304 Mich App 750, 754; 849 NW2d 408 (2014). "An abuse of discretion occurs if the trial court's decision falls outside the range of principled outcomes." *Id*.

### III. UM COVERAGE UNDER THE CITIZENS POLICY

Plaintiffs argue that the trial court erred by granting Citizens's motion for summary disposition because plaintiffs were injured in a hit-and-run accident involving an uninsured motor vehicle as that term is defined in Citizens's UM endorsement. We decline to address this issue on the merits for two reasons. First, it is moot. Second, even if its resolution in plaintiffs' favor would have a practical effect on this case, the doctrine of judicial estoppel would preclude us from accepting a factual predicate necessary to plaintiffs' claim of error.

"Uninsured motorist coverages is not statutorily mandated and, therefore, the terms of the contract control whether a claimant is entitled to benefits." *Drouillard v American Alternative Ins Corp*, 504 Mich 919, 919 (2019). Courts interpret insurance policies "in the same manner as other contracts, assigning the words in the contract their ordinary and plain meaning if such would be apparent to a reader of the instrument." *Wasik v Auto Club Ins Ass'n*, 341 Mich App 691, 695; 992 NW2d 332 (2022) (quotation marks and citations omitted). When a contract defines a term, however, the contract must be interpreted consistent with the expressed definition. *Century Surety Co v Charron*, 230 Mich App 79, 82; 583 NW2d 486 (1998).

Citizens's UM endorsement dictates that Citizens will pay compensatory damages that an insured is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of bodily injury that was sustained by an insured and caused by an accident. For purposes of UM coverage, an uninsured motor vehicle is defined under § C.4 of the UM endorsement to include:

> An "auto" involved in a hit-and-run "auto" accident which causes bodily injury to an "insured" by direct physical contact with the "insured" or with an "auto" occupied by the "insured". The identity of the operator of the hit-and-run "auto" must be unknown. The accident must be reported within 24 hours to a police, peace, or judicial officer, to the Commissioner of Motor Vehicles of the State of Michigan or to the equivalent department in which the state where the accident occurred. We must be notified of the accident within 30 days of the date of the accident occurred. If the insured was occupying an "auto" at the time of the accident, we have a right to inspect the "auto[.]"

Plaintiffs argue that the trial court should not have granted summary disposition in favor of Citizens because the Caravan that caused the accident satisfied the foregoing definition of an uninsured motor vehicle. However, plaintiffs' position fails to appreciate that the trial court's ruling was not premised on the definitions of an uninsured motor vehicle set forth in § C of the UM endorsement, but rather the vehicles that were explicitly excluded from the definition of an uninsured motor vehicle set forth in § D and, more specifically, the exclusion of vehicles "owned

or operated by a self-insurer" in § D.2. In other words, plaintiffs' claim of error concerns the availability of coverage in the first instance, while the trial court's grant of summary disposition concerned an entirely different question, namely, whether coverage was negated by an exclusionary provision. See *Travelers Prop Cas Co of America v Peaker Servs, Inc*, 306 Mich App 178, 184; 855 NW2d 523 (2014) ("Interpretation of an insurance policy ultimately requires a two-step inquiry: first, a determination of coverage according to the general insurance agreement and, second, a decision regarding whether an exclusion applies to negate coverage.") (quotation marks and citation omitted). This distinction renders plaintiffs' claim of error moot because, even if we agreed that the Caravan satisfied the definition of an uninsured motor vehicle in § C.4, it would still not qualify as an uninsured motor vehicle as a result of the exclusion in § D.2. See *Moore v Genesee Co*, 337 Mich App 723, 726-727; 976 NW2d 921 (2021) (explaining that an issue is moot when "it is impossible for the court to craft an order with any practical effect on the issue"). This Court will generally not decide moot issues. *Id.*

Even if this issue was not moot, it would be inappropriate for this Court to accept plaintiffs' position in light of the record currently before us. The identity of the operator of a hit-and-run vehicle must be unknown for the vehicle to be considered an uninsured motor vehicle under § C.4. Plaintiffs contend that this condition is met because the police report in which Baily is named as the driver merely identified the lessee of the vehicle, but the driver's true identity remains unknown and cannot be determined when the occupants fled the scene and Baily has not participated in the instant litigation. While we acknowledge the record contains scant evidence concerning who was operating the Caravan at the time of the accident, judicial estoppel principles preclude this Court from holding that the driver was unknown or that a question of fact exists regarding the driver's identity.

"Judicial estoppel precludes a party from adopting a legal position in conflict with a position taken earlier in the same or related litigation." *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 537; 847 NW2d 657 (2014) (quotation marks and citation omitted). For this doctrine to apply, the party must have "unequivocally and successfully" advanced a "wholly inconsistent" theory. *Id.* (quotation marks and citations omitted). Judicial estoppel is an equitable doctrine employed to protect the integrity of the judicial system and promote "truthfulness and fair dealing in court proceedings." *Dep't of Transp v Riverview-Trenton R Co*, 332 Mich App 574, 594-595; 958 NW2d 246 (2020) (quotation marks and citation omitted). In determining whether to apply the doctrine, a critical factor is "whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped." *Id.* at 594 (quotation marks and citation omitted).

Plaintiffs named Baily as a defendant in this action, alleging that she was negligently operating the Caravan at the time of the accident. Baily was served with the summons and complaint and failed to appear or respond in the time frame designated by the court rules. The court clerk eventually entered a default against Baily at plaintiffs' request. After the trial court denied plaintiffs' motion for reconsideration, plaintiffs moved for entry of a default judgment, again claiming that the Terrain they were traveling in was violently sideswiped by Baily, causing both plaintiffs to suffer debilitating injuries that required extensive medical treatment. The trial court granted plaintiffs' motion and entered a sizable judgment against Baily and in favor of each plaintiff. Because plaintiffs' previous contention that Baily negligently operated the Caravan is wholly inconsistent with their current assertion that the driver remains unknown, and plaintiffs successfully obtained a judgment on the basis of the former theory, judicial estoppel precludes this

-4-

claim of error. Allowing plaintiffs to procure a judgment against the negligent driver while simultaneously obtaining UM benefits on the basis that the driver is unidentifiable is the precise type of "unfair advantage" judicial estoppel aims to prevent.

## IV. AMBIGUITY IN THE CITIZENS POLICY

Plaintiffs next argue that the trial court erred by granting Citizens's dispositive motion because certain portions of the policy are ambiguous. Plaintiffs did not oppose Citizens's motion on this basis below, nor was any potential ambiguity explored by the trial court in its decision. This issue is therefore unpreserved. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). We are bound by the raise-or-waive rule in civil proceedings, under which failure to preserve an issue waives appellate review. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). See also *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 3-5 (rejecting review of unpreserved claims of error in civil proceedings under plain-error standard). As such, we will not address this argument raised for the first time on appeal.

## V. REINSTATEMENT OF CLAIMS AGAINST PROGRESSIVE MICHIGAN

Lastly, plaintiffs take issue with the trial court's refusal to reinstate their claims against Progressive Michigan after it determined that plaintiffs were not to be afforded UM or UIM coverage under the Citizens policy. We disagree.

The trial court rejected plaintiffs' request to reinstate their claim against Progressive Michigan, reasoning that Progressive Michigan's policy excluded UM and UIM coverage if another policy afforded such coverage, which the Citizens's policy did, even if coverage was ultimately unavailable to plaintiffs because of policy exclusions and plaintiffs' failure to provide sufficient proofs to support their claims. Plaintiffs disagree, emphasizing that the Citizens policy did not provide coverage to plaintiffs by the trial court's own determination. We find plaintiffs' position unpersuasive.

Coverage under the Progressive Michigan policy was not controlled by whether plaintiffs actually obtained UM or UIM benefits from another insurer. As noted above, "[u]ninsured motorist coverages is not statutorily mandated and, therefore, the terms of the contract control whether a claimant is entitled to benefits." *Drouillard*, 504 Mich at 919. The same is true with respect to UIM benefits. *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76, 84; 910 NW2d 691 (2017). Like any other contract, insurance policies are construed by applying the plain and ordinary meaning of the contractual language. *Wasik*, 341 Mich App at 695. When a contract defines a term, however, the contract must be interpreted consistent with the expressed definition. *Century Surety Co*, 230 Mich App at 82.

The Progressive Michigan policy states:

[**W**]**e** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:

1. sustained by an **insured person**;

2. caused by an accident; and

3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle**.

The trial court dismissed the claims against Progressive Michigan because neither plaintiff qualified as an "insured person" under the Progressive Michigan policy.

The Progressive Michigan policy defines an insured person, in pertinent part, as "any person who is not an insured for Uninsured/Underinsured Motorist or similar coverage by any other insurance policy occupying, but not operating, a covered auto[.]" It is undisputed that plaintiffs were occupying a covered auto, but Progressive Michigan argued, and the trial court agreed, that plaintiffs were not insured persons because they had UM and UIM insurance under the Citizens policy. The trial court did not err in that regard. The Citizens policy extends UM and UIM coverage to an "insured," which, it defines as including "[y]ou or any 'family member.' " "You," in turn, is defined as including "[t]he 'named insured' shown in the Declarations." Plaintiffs are both named insureds in Citizens's declarations page and, therefore, "insured[s]" for purposes of the UM and UIM endorsements.

The controlling question in determining whether plaintiffs were insured persons under the Progressive Michigan policy was whether they were "insured for Uninsured/Underinsured Motorist or similar coverage by another insurance policy . . . ." That plaintiffs' claims against Citizens were dismissed on the basis of a policy exclusion and failure to adequately support their claims does not alter the fact that they were insured for UM and UIM coverage by the Citizens policy. Consequently, the trial court did not abuse its discretion when it declined to reinstate plaintiffs' claims against Progressive Michigan following dismissal of Citizens.

Plaintiffs also claim that they were insured persons because they were relatives of Evan and his wife, the named insureds on the Progressive Michigan policy. We disagree. In addition to the definition of an "insured person" discussed above, the Progressive Michigan policy also defined that term to mean "**you**, a **relative**, or a **rated resident**[.]" A relative, as defined in the Progressive Michigan policy, means "a person *residing in the same household* as you, and related to you by blood, marriage or adoption, and includes a ward, stepchild, or foster child. Your unmarried dependent children temporarily away from home will qualify as a relative if they intend to continue to reside in your household." (Bold emphasis omitted; italicized emphasis added.) The evidence before the trial court suggested that Evan and his wife lived in Warren, while plaintiffs lived in Sterling Heights. Munir confirmed the latter fact, testifying that he and Evaa lived in Sterling Heights and resided only with each other and their children. It is clear from the evidence that plaintiffs were relatives of Evan and his wife in the ordinary sense of that word, but did not qualify as residents for purposes of the Progressive Michigan policy because they did not reside in the same household.

## VI. CONCLUSION

There were no errors warranting relief.  Therefore, we affirm.[3]

/s/ Michael J. Riordan
/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett

---

[3] Plaintiffs' brief on appeal includes an argument regarding whether EAN Holdings could be vicariously liable for the driver's negligence under MCL 257.401.  This argument is not properly before us because it is not within the scope of plaintiffs' statement of the questions presented for appeal.  *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 543; 730 NW2d 481 (2007).  We treat such issues as abandoned.  *Id.*

It would be inappropriate for us to address this issue on the merits in any event because it was not preserved below.  Issues not raised before the trial court in civil proceedings are deemed waived and should not be decided absent special circumstances not applicable here.  *Tolas Oil & Gas Exploration Co*, ___ Mich App at ___; slip op at 2-5.  Plaintiffs presented a cursory, single-paragraph argument regarding the owner's potential liability in this case, but that argument was exclusively premised on the terms of a rental agreement that was not produced by plaintiffs. Adding further confusion to this point, plaintiffs referred to an unknown "Ms. Thomas" and facts that were not developed in this case, making it unclear whether the argument was intended to apply to this case at all.  At any rate, they did not cite, let alone raise any arguments regarding, the owner's liability statute.