*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANESTHESIA SERVICES AFFILIATES,

        Plaintiff-Appellant,

and

MICHIGAN AMBULATORY SURGICAL
CENTER and PHASE ONE REHAB, LLC,

        Intervening Plaintiffs-Appellants,

v

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
October 06, 2025
9:25 AM

No. 369778
Wayne Circuit Court
LC No. 22-007561-CZ

Before: RIORDAN, P.J., and O'BRIEN and GARRETT, JJ.

RIORDAN, P.J. (*concurring in part and dissenting in part*).

I concur with the majority that this Court has jurisdiction over this appeal. However, I respectfully dissent from the majority's ruling that the trial court erred by granting summary disposition in favor of defendant Allstate Property and Casualty Insurance Company. I would instead conclude that the trial court correctly granted summary disposition in favor of defendant.

## I. FACTS AND PROCEEDINGS

In July 2020, Teresa Davis was involved in a motor-vehicle accident in Detroit, allegedly suffering various injuries. At the time, she was insured by defendant. In March 2021, plaintiff Anesthesia Services Affiliates ("plaintiff ASA"), as assignee of Davis, sued defendant in the district court. Plaintiff ASA alleged that defendant violated the no-fault act, MCL 500.3101 *et seq.*, by failing to pay for $15,500 in medical services that it provided to Davis. The case was transferred to the trial court in about June 2022, where Michigan Ambulatory Surgical Center and

Phase One Rehab, LLC, as assignees of Davis, joined the case as intervening plaintiffs and added similar claims against defendant.

In May 2023, defendant moved for summary disposition under MCR 2.116(C)(10), asserting that "[n]umerous material misrepresentations were made prior to and during the course of this litigation that Davis knew were false and she intended Defendant to act upon in an effort to collect for benefits that she did not need . . . ." According to defendant, these misrepresentations included falsely claiming in her application for benefits that she had never complained to a medical professional about knee or shoulder pain, notwithstanding that she sought medical treatment for knee and shoulder pain in 2019; falsely claiming that she was unable to drive after the accident despite video surveillance showing otherwise; and claiming excessive costs for attendant-care services. These allegations were supported by substantial documentary evidence.[1] Defendant argued that in light of Davis's fraud in seeking personal protection insurance (PIP) benefits, as well as the antifraud provision in the no-fault policy issued to Davis stating that the policy was void for fraud relating to "[r]eporting a claim or providing information during the claims settlement process," the healthcare-provider plaintiffs could not recover from defendant. In support of this argument, defendant cited *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 424-425; 864 NW2d 609 (2014), which held that when an insured commits fraud in connection with a claim for PIP benefits, the claims of both the insured and his or her healthcare providers are barred pursuant to a standard antifraud provision in the no-fault policy.[2]

Plaintiffs responded that *Williams v Farm Bureau Mut Ins Co of Mich*, 335 Mich App 574, 582-583; 967 NW2d 869 (2021), limited *Bahri* to cases of fraud in the inducement and, as a result, "Defendant's Motion is futile as post-procurement fraud cannot be the basis to seek dismissal or rescission." That is, plaintiffs contended, "*Bahri* is no longer good law so much as Defendant relies upon it in the instant Motion."

In October 2023, the trial court denied the motion in a written order, stating, "Question of Fact." Defendant moved for reconsideration, again arguing that it was entitled to summary disposition because "Davis made a number of material misrepresentations . . . in furtherance of an elaborate scheme of fraud." Defendant also observed that in the past few months, the district court and the trial court itself had repeatedly dismissed claims of other healthcare providers against defendant arising from the same accident because of Davis's fraud. Defendant asserted that the trial court "must render a consistent determination to promote judicial economy [and] consistency . . . ." Defendant thus requested that the trial court grant its motion for reconsideration and grant summary disposition in its favor. The trial court seemingly agreed, entering a written order granting the motion on the basis of "Fraud in the inducement of the contract."

---

[1] Defendant alleged several additional acts of misrepresentations that are not necessary to catalogue here.

[2] Defendant also argued that it was entitled to summary disposition because Davis's alleged injuries were not caused by the accident. See *Douglas v Allstate Ins Co*, 492 Mich 241, 257; 821 NW2d 472 (2012). However, the trial court did not rule on that issue, and it is not before us on appeal.

This appeal followed. On appeal, plaintiffs argue that the trial court erred by granting summary disposition in favor of defendant on the basis of fraud in the inducement, as that legal ground was never raised by defendant in the trial court. Plaintiffs also argue that the trial court's ruling cannot be sustained on the alternate basis of postprocurement fraud, as *Williams* held that postprocurement fraud cannot operate as a basis to invoke an antifraud provision in a no-fault policy. Following oral argument, we invited supplemental briefing from the parties on "whether the holding in [*Bahri*] that an insured's false statements to an insurer made after procuring a no-fault insurance policy may be used to void or rescind the policy[] was properly limited by [*Williams*] . . . ." *Anesthesia Servs Affiliates v Allstate Prop & Cas Ins Co*, unpublished order of the Court of Appeals, entered January 13, 2025 (Docket No. 369778). The parties filed the supplemental briefs as requested, with defendant arguing that *Bahri* remains good law and plaintiffs countering that *Williams* properly limited *Bahri*. Plaintiffs also argue that because MCL 500.3112 of the no-fault act was amended in 2019 to provide healthcare providers with a direct cause of action against no-fault insurers, healthcare providers such as plaintiffs no longer "stand in the shoes" of the insured and thus cannot be barred from reimbursement because the insured committed fraud.

## II. STANDARD OF REVIEW

"This Court reviews de novo a circuit court's decision on a motion for summary disposition under MCR 2.116(C)(10)." *Charter Twp of Canton v 44650, Inc*, 346 Mich App 290, 308; 12 NW3d 56 (2023). "Summary disposition under MCR 2.116(C)(10) is proper if there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. at 308-309 (quotation marks and citation omitted). Similarly, "[t]his Court reviews de novo decisions regarding . . . issues of statutory interpretation." *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013). "The proper interpretation of a contract and the legal effect of a contractual clause are questions of law that we review de novo." *Sherman-Nadiv v Farm Bureau Gen Ins Co of Mich*, 282 Mich App 75, 78; 761 NW2d 872 (2008).

"We review a trial court's decision on a motion for reconsideration for an abuse of discretion." *Frankenmuth Ins Co v Poll*, 311 Mich App 442, 445; 875 NW2d 250 (2015). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted).

## III. DISCUSSION

MCL 500.3105(1) of the no-fault act generally provides that "[u]nder personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." However, the no-fault policy in this case included an antifraud provision, which states that "[t]his entire policy is void from its inception if an insured person has misrepresented or concealed material facts, provided fraudulent statements, or committed any other dishonest or fraudulent act related to . . . [r]eporting a claim, or providing information during the claims settlement process."

It is undisputed that a no-fault policy may be voided if it was "obtained as a result of fraud or misrepresentation," i.e., preprocurement fraud. *Titan Ins Co, v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012). However, the extent to which a no-fault policy may be voided for fraud occurring in connection with a claim for PIP benefits, i.e., postprocurement fraud, has been a matter of some dispute in Michigan.[3]

In *Bahri*, this Court held that when an insured commits fraud in seeking PIP benefits, healthcare providers cannot recover medical expenses from the insurer pursuant to an antifraud provision of the no-fault policy. *Bahri*, 308 Mich App at 424-426. In other words, when a no-fault policy essentially provides that it is void whenever the insured commits fraud in connection with a claim for PIP benefits, that provision applies against both the insured him- or herself, as well as the healthcare providers treating the insured because the providers "stand in the shoes" of the insured. See *id*. at 424 ("Because intervening plaintiffs stood in the shoes of the named insured, if plaintiff cannot recover benefits, neither can intervening plaintiffs.").[4]

In *Shelton v Auto-Owners Ins Co*, 318 Mich App 648; 899 NW2d 744 (2017), a passenger was injured in a motor-vehicle accident, and she sought PIP benefits from the insurer of the driver. *Id*. at 650-651. However, the passenger allegedly committed fraud when seeking those PIP benefits, and the insurer sought a court ruling that she was not entitled to PIP benefits under the antifraud provision of the no-fault policy issued to the driver. *Id*. at 651-652. This Court disagreed with the insurer, reasoning that the antifraud provision did not apply because the passenger "was not a party to, nor an insured under, the policy; she was injured while a passenger, and because neither she nor her spouse or resident relative had a no-fault policy, [the insurer] was required to pay her benefits pursuant to statute, not pursuant to a contractual agreement." *Id*. at 652. And, this Court explained, MCL 500.3114 of the no-fault act generally provided that the insurer of the driver had the highest priority with respect to the passenger herself, notwithstanding any

---

[3] Postprocurement fraud generally is divided into two types: (1) fraud that occurred before litigation is initiated, and (2) fraud that occurred after the litigation is initiated. See *Fashho v Liberty Mut Ins Co*, 333 Mich App 612, 619; 963 NW2d 695 (2020). Rescission is available as a remedy for the former but not the latter. *Id*. See also *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726; 957 NW2d 858 (2020) ("[A] general rule [is] that statements made during litigation do not implicate a fraud or false-swearing clause."). The fraudulent statements at issue in this case generally occurred before the litigation was initiated.

[4] *Bahri* explained that voiding a policy on the basis of fraud requires a showing of the following four elements:

> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Id*. at 424-425 (quotation marks and citation omitted).]

-4-

contractual policy between the driver and the insurer. *Id*. at 654-655. Nonetheless, this Court noted that its holding did not preclude a remedy for the insurer in the event of fraud:

> [The insurer] argues that we should depart from the statute as a matter of public policy because if we do not, no-fault insurers will lose the ability to deny fraudulent no-fault claims. This argument is meritless. As always, if an insurer concludes that a claim is fraudulent, it may deny the claim. Should the claimant then file suit, the burden is on the claimant to prove that he or she is entitled to his or her claimed benefits, a burden that is highly unlikely to be met if the fact-finder concludes that the claim is fraudulent. And insurers can obtain attorney fees for having to litigate any claims that are determined to be fraudulent. [*Id*. at 656 (cleaned up).]

Thereafter, in *Meemic Ins Co v Fortson*, 506 Mich 287; 954 NW2d 115 (2020), the son of the named insureds was injured in a motor-vehicle accident, and the named insureds, his parents, sought an excessive and fraudulent amount of attendant-care benefits from their insurer. *Id*. at 293-295. The insurer thus attempted to void the no-fault policy under the antifraud provision of that policy. *Id*. at 295. Our Supreme Court held that the insurer could not do so, reasoning that the insurer could only invoke a fraud-based defense if the defense was available under the no-fault act itself or "it is a common-law defense that has not been abrogated." *Id*. at 303. With regard to the no-fault act, the Court explained that "[t]he no-fault act . . . does not provide a fraud defense to PIP coverage," so the insurer could not invoke a fraud-based defense under that law. *Id*. at 303-304. Further, with regard to the common law, the Court explained that under the common law, "a postprocurement fraud clause that rescinds a contract would be valid as applied to a party's failure to perform a substantial part of the contract or one of its essential terms." *Id*. at 307-308. However, the Court stated, the antifraud provision at issue did not apply because "there has been no argument or showing that the misrepresentations in this case constituted a failure to perform a substantial part of the contract or an essential term, such that [the insurer] could obtain rescission instead of bringing an action for damages." *Id*. at 310. As a result, the insurer's "contract-based fraud defense fails because it is not the type of common-law fraud that would allow for rescission." *Id*. Thus, the Court concluded that the insurer's "contractual antifraud provision is invalid and unenforceable because it is not based on a statutory or unabrogated common-law defense." *Id*. at 316. Moreover, in a footnote, the Court observed that it was not deciding whether *Bahri* correctly held that an antifraud provision applies when the fraud relates to proof of loss:

> The Court of Appeals has upheld a fraud-exclusion provision when the fraud related to proof of loss on a claim rather than fraud in the procurement or execution of the policy. See *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 425, 864 NW2d 609 (2014); but see *Shelton*, 318 Mich App at 652-655 (limiting *Bahri* to when the claimant is an insured under the defendant's policy). A leading treatise has explained that "to avoid a policy on the ground of fraud or false swearing in the proof of loss, the statement in question must be material." 13A Couch, Insurance, 3d (2019 rev. ed.), § 197:18, pp. 48-49. In this case, however, because there is no allegation of fraud in relation to [the son's] claim for benefits, the Court need not address the issue of whether and to what extent fraud related to proof of loss can justify voiding the policy. Moreover, because this case involves fraud by someone other than the claim beneficiary, the Court need not address whether a clause

voiding a policy for postprocurement fraud would be valid as applied to fraud by an individual who is both a policyholder and the claim beneficiary. [*Id*. at 307 n 15.]

The following year, in *Williams*, without seeking to convene a conflict panel beforehand under MCR 7.215(J)(2), this Court held that "*Bahri* remains good law only to the extent that it is consistent with the no-fault act and common law as explained in *Meemic*. In other words, it applies only in cases of fraud in the inducement." *Williams*, 335 Mich App at 585. This Court reasoned that *Meemic* "unambiguously concluded that antifraud provisions are invalid to the degree they purport to apply to misrepresentations or fraud that occurs after the policy has been issued (postprocurement fraud) but upheld such provisions as long as they are limited to fraud in the inducement (preprocurement fraud)." *Id*. at 578. This Court acknowledged that *Meemic* "mentioned *Bahri* only in a footnote and declined to determine whether and to what extent that case survived its holding," *id*. at 583, but inferred that "[b]y addressing *Bahri* only tangentially and declining to adopt its holding, the *Meemic* Court left it to our Court to sort out what now remains of *Bahri*," *id*. at 585. And, as noted, this Court concluded that under *Meemic*, *Bahri* only applies to cases of fraud in the inducement, i.e., preprocurement fraud. See *id*.

*Williams* is inconsistent with the law concerning judicial precedent, as well as our court rules themselves. Under MCR 7.215(J)(1), "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule."[5] The obvious implication of MCR 7.215(J)(1) is that a conflict panel must be convened whenever a panel seeks to overrule a rule of law established by this Court on or after November 1, 1990, unless that rule of law has been "reversed or modified by the Supreme Court." MCR 7.215(J)(1). Indeed, our Supreme Court has referred to MCR 7.215(J)(1) as the " 'first-out' rule," whereby a subsequently issued decision that does not comply with MCR 7.215(J) does not constitute binding precedent on the disputed issue:

> Under the "first out" rule of MCR 7.215(J)(1), the *Kopp* panel [*Kopp v Zigich*, 268 Mich App 258; 707 NW2d 601 (2005)] should have followed [*Jones v Enertel, Inc*, 254 Mich App 432; 656 NW2d 870 (2002)] or declared a conflict under MCR 7.215(J)(2). Because the *Kopp* panel did not declare a conflict, *Jones* is the controlling precedent and proof of a duty is required "before fault can be apportioned and liability allocated" under the comparative fault statutes, MCL 600.2957 and MCL 600.6304. [*Romain v Frankenmuth Mut Ins Co*, 483 Mich 18, 20-21; 762 NW2d 911 (2009) (cleaned up).]

This "first-out rule" is consistent with the manner by which federal intermediate appellate courts consider competing decisions. As explained in *The Law of Judicial Precedent*:

> With an intermediate appellate court, an earlier horizontal precedent nearly always controls. This doctrine is based on the "general rule" that "one panel may not

---

[5] MCR 7.215(J)(2) to (7) addresses the procedure for such conflict panels.

overrule the decision of a prior panel." The federal appellate courts in particular apply this solution to resolve a conflict between different panels and hold that the earlier opinion controls later panels and also the district courts in the circuit. [Garner et al., *The Law of Judicial Precedent* (St Paul: Thomson/West, 2016), pp. 303-304 (footnotes omitted).]

See also *Toman v McDaniels*, ___ Mich App ___, ___; ___NW3d ___ (2023) (Docket No. 361655), slip op at 12-13, rev'd on other grounds by *Toman v McDaniels*, ___ Mich ___; 12 NW3d 406 (2024) (quoting same).

*Williams* disregarded these principles. Instead, *Williams* acknowledged—accurately—that *Meemic* expressly declined to address whether *Bahri* was correctly decided. Again, as noted, *Meemic* stated that *Bahri* "upheld a fraud-exclusion provision when the fraud related to proof of loss on a claim," but that "the Court need not address the issue of whether and to what extent fraud related to proof of loss can justify voiding the policy" because *Meemic* itself did not involve those facts. *Meemic*, 506 Mich at 307 n 15. In other words, our Supreme Court in *Meemic* did not reverse or modify *Bahri*, the necessary predicate for discarding binding precedent of this Court without a conflict panel. See MCR 7.215(J)(1). However, a majority of the appellate panel in *Williams* nonetheless erroneously took it upon itself and decided that it would substantively overrule the *Bahri* holding that an antifraud provision applies to both an insured and his or her healthcare providers when the insured commits fraud in connection with a claim for PIP benefits, i.e., postprocurement fraud. The *Williams* majority erred by doing so without complying with MCR 7.215(J)(1). As a result of its error, *Bahri* remains the state of the law in Michigan under the "first-out rule." See *Romain*, 483 Mich at 20 ("Under the 'first out' rule of MCR 7.215(J)(1), the *Kopp* panel should have followed *Jones* or declared a conflict under MCR 7.215(J)(2). Because the *Kopp* panel did not declare a conflict, *Jones* is the controlling precedent . . . .").

For these reasons, the bench and bar is free, as it has been since this Court's publication of the *Bahri* decision, to cite and apply *Bahri* to questions of postprocurement fraud, at least until it is properly overruled by our Supreme Court or a conflict panel of this Court under MCR 7.215(J)(1). In any event, I would apply *Bahri* to the matter before us. Here, under *Bahri*, the trial court correctly granted summary disposition in favor of defendant.

In its May 2023 motion for summary disposition, defendant submitted a plethora of evidence indicating that Davis committed fraud in connection with her claim for PIP benefits. As summarized by defendant, Davis's fraud included "[d]istorting her subjective complaints and physical limitations to deceive the medical judgment of her providers," "[c]oncealing her ability to drive following the accident," "[k]nowingly attempting to collect household and attendant care services that were not performed, claiming services that she was able to perform and performed, filling out household service and attendant care forms on dates that do not exist," and "[i]ntentionally submitting an application for benefits indicating that she did not receive any medical treatment for the same or similar symptoms prior to this accident . . . ." (Cleaned up.) These allegations were well-supported by documentary evidence and entitle defendant to summary disposition under *Bahri* because Davis committed postprocurement fraud in connection with her claim for PIP benefits, and her healthcare providers are barred from collecting those benefits under

the antifraud provision of the no-fault policy at issue.[6]  As such, the trial court correctly reached this conclusion.[7]

To summarize, *Bahri*, not *Williams*, is the law in Michigan.  That is, under principles of stare decisis, *Williams* did not overrule *Bahri*.  See Garner et al., *The Law of Judicial Precedent* (St Paul: Thomson/West, 2016), pp. 303-304.  Further, while I acknowledge that the Legislature amended the no-fault act in 2019 to provide that healthcare providers "may make a claim and assert a direct cause of action against an insurer," see 2019 PA 21, that amendment merely restored the state of the law to its existence before *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017).[8]  See *Spectrum Health Hosp v Mich Assigned Claims Plan*, 330 Mich App 21, 28 n 4; 944 NW2d 412 (2019), superseded by statute on other grounds as stated in *Williamson v AAA of Mich*, 513 Mich 264; 15 NW3d 546 (2024). ("The Michigan Legislature 'overruled' *Covenant* by amending MCL 500.3112 to give healthcare providers the right to file a direct claim or cause of action against an insurer for reimbursement for services provided to an injured person.  See 2019 PA 21, effective June 11, 2019.").  In other words, the effect of 2019 PA 21 was not to change the state of the law that was in existence at the time *Bahri* was decided.  Rather, the effect of 2019 PA 21 was to restore the state of the law that was in existence at the time *Bahri* was decided, meaning that *Bahri* continues to be valid at this time.  Compare *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 373; 803 NW2d 698 (2010) ("It is the province of the Legislature to acquiesce in the judicial interpretation of a statute or to amend the legislation to obviate a judicial interpretation.") (cleaned up).  Therefore, because *Bahri* was decided under the

_____

[6] Indeed, plaintiffs in their response brief did not directly contest that Davis committed fraud.  Rather, plaintiffs asserted that "*Bahri* is no longer good law so much as Defendant relies upon it in the instant Motion."  However, as previously explained, *Bahri* is "good law" until it is properly overruled by our Supreme Court or a conflict panel of this Court under MCR 7.215(J)(1).

[7] The majority correctly observes that the trial court granted summary disposition in favor of defendant on the basis of "[f]raud in the inducement."  However, defendant did not argue in the trial court that it was entitled to summary disposition on the basis of fraud in the inducement, and there is nothing in the record to indicate that this would be a possible issue.  Thus, it appears that the trial court intended to grant summary disposition to defendant on the basis of postprocurement fraud, which was the actual issue raised by defendant in its motion for summary disposition and its motion for reconsideration, and the reference to "[f]raud in the inducement" was a clerical mistake.  Therefore, I would remand to the trial court for that court to enter a nunc pro tunc order identifying the correct reason for its grant of summary disposition, if my understanding of the record is correct.

[8] In *Covenant*, our Supreme Court overruled caselaw from this Court dating back to 1995 essentially providing that a healthcare provider possesses a direct cause of action against a no-fault insurer for no-fault benefits.  See *Covenant*, 500 Mich at 195.  In other words, when *Bahri* was decided in 2015, the state of the law was that a healthcare provider did possess such a cause of action.

pre-*Covenant* state of the law, it follows that 2019 PA 21 and *Covenant* itself do not affect the outcome of this case.[9]

In any event, I note that there is nothing in this appeal that would preclude defendant from pursuing a fraud-based defense on remand. In *Shelton*, this Court observed that "[a]s always, if an insurer concludes that a claim is fraudulent, it may deny the claim." *Shelton*, 318 Mich App at 655. "Should the claimant then file suit, the burden is on the claimant to prove that he or she is entitled to his or her claimed benefits, a burden that is highly unlikely to be met if the fact-finder concludes that the claim is fraudulent." *Id*. Consequently, even if defendant here is not entitled to void the no-fault policy on the basis of the antifraud provision, it may nonetheless deny fraudulent claims that flow from the policy. See *Settler v Auto-Owners Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued August 10, 2023 (Docket No. 361189) ("While defendant was not entitled to void the policy as a result of plaintiff's application for benefits, it was entitled to deny the claims that flowed from it. Thus, the trial court did not err when it concluded that plaintiff's application for benefits could serve as a basis for defendant's fraud defense and denial of coverage.").

## IV. CONCLUSION

For the reasons explained herein, the trial court correctly granted summary disposition in favor of defendant. However, because its written order apparently includes an inadvertent error, in lieu of outright affirming the trial court, I would remand to that court for entry of a nunc pro tunc order identifying the correct reason for its grant of summary disposition if appropriate.[10]

/s/ Michael J. Riordan

---

[9] For this reason, I disagree with plaintiffs' supplemental brief that 2019 PA 21 operates as a legislative overruling of *Bahri*.

[10] Plaintiffs assert on appeal that the trial court should be reversed for the additional reason that defendant settled with Davis personally in May 2023, so "[a]ny misrepresentations by Davis have been rendered no longer material because Defendant now knows about them and elected to pay Davis's claims regardless." However, parties may settle a case for a variety of reasons including, for example, the desire to avoid litigation expenses for a relatively minor claim. That settlement does not have preclusive effect here, especially in light of the fact that defendant has pursued fraud defenses against other healthcare providers involved in this matter.